**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **AMIR-MUZAFFAR LATIPOV,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-585-R** |
| | ) | |
| **SCARLET GRANT, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## **ORDER**

Petitioner, a citizen of Uzbekistan, entered the United States on or about September 28, 2023, and was detained by the Department of Homeland Security. On September 29, 2023, DHS issued a Notice to Appear charging Petitioner as subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i), classifying him as someone present in the United States without having been admitted or paroled [Doc. No. 1-1]. Petitioner was released on his own recognizance [Doc. Nos. 1-4, 1-5] but was later re-detained by Immigration and Customs Enforcement on March 11 2026, pursuant to 8 U.S.C. § 1225(b)(2).

Now before the Court is Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Doc. No. 1] claiming violations of the Immigration and Nationality Act and the United States Constitution. Petitioner asserts the mandatory detention provision pursuant to which he is currently being detained, 8 U.S.C. § 1225(b)(2)(A), does not apply to noncitizens like him who previously entered the country. Respondents filed a Response in Opposition [Doc. No. 6]. Petitioner filed a Reply [Doc. No. 7].

1

The key question in this case is whether Petitioner is properly detained pursuant to § 1225(b)(2)(A), which provides for mandatory detention, or whether he must instead be detained pursuant to § 1226(a), which generally provides for a bond hearing. This Court has previously determined that § 1226(a) governs the detention of noncitizens who were apprehended within the United States after entering the country without admission or inspection. *See Valdez v. Holt*, Case No. CIV-25-1250-R, 2025 WL 3709021, at *1 (W.D. Okla. Dec. 22, 2025); *Perez v. Grant*, No. CIV-25-1560-R, 2026 WL 315065, at *1 (W.D. Okla. Feb. 5, 2026); *Salomov v. Noem*, No. CIV-26-143-R, 2026 WL 607446, at *1 (W.D. Okla. Mar. 4, 2026).[1] The Court adopts the reasoning and conclusions set forth in these prior orders.

Respondents argue, however, that no matter what view this Court adopts with respect to the § 1225/§ 1226 issue, Petitioner still falls under § 1225(b)(2)(A)'s categorical detention mandate. Specifically, Respondents argue:

> the Supreme Court has held that noncitizens "who arrive at ports of entry— even those paroled elsewhere into the country for years pending removal— are 'treated' for due process purposes 'as if stopped at the border.'" *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (first quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), then quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953))[.] And this same rule applies to an actively arriving noncitizen "who is detained shortly after unlawful entry." *Id.* at 140. Thus, by virtue of this "entry-fiction doctrine," Petitioner is legally treated as if [he] were still actively arriving by virtue of [his] conditional parole.

---

[1] On this issue, the Court finds persuasive the analysis provided by the Seventh Circuit in *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025) and Second Circuit in *Cunha v. Freden*, — F. 4th —, 2026 WL 1146044 (2d. Cir. Apr. 28, 2026). The Court also acknowledges the contrary 2-1 decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).

Doc. No. 6, at p. 9.

In a recently issued opinion, the Second Circuit examined similar "entry fiction" arguments in the context of the § 1225/§ 1226 debate and found them unpersuasive:

> We are equally unpersuaded by the government's contention that its reading "brings the statute in line with the longstanding 'entry fiction'" repeated throughout Supreme Court precedent, suggesting that noncitizens like Petitioner can be treated "as if stopped at the border" because they have never lawfully entered. Appellant's Br. at 43–44 (quoting *Thuraissigiam*, 591 U.S. at 139). Under the government's reading, Petitioner is still "seeking admission" because he had not lawfully entered.

> However, that approach overreads the Supreme Court's "entry fiction" precedents and disregards a century of immigration law establishing the meaning of "entry" as the "coming of an alien from a foreign country into the United States." *United States ex rel. Volpe v. Smith*, 289 U.S. 422, 425 (1933). Indeed, it has long been settled that a noncitizen can effect an entry even by crossing the border illegally. *See Yamataya v. Fisher*, 189 U.S. 86, 99–102 (1903). The pre-1996 INA sought to "giv[e] due recognition to the[se] judicial precedents" by defining entry as the "coming of an alien from a foreign port or place or an outlying possession into the United States." *Landon v. Plasencia*, 459 U.S. 21, 29 n.6 (1982) (quoting S. Rep. No. 1137, at 4 (1952)). While IIRIRA replaced that statutory definition of "entry" with "admission," it did not redefine "entry" or give any indication that it departed from these longstanding precedents.

> Although the "entry fiction" doctrine allows the government to treat physical entrants as if still "on the threshold" if they are "detained shortly after unlawful entry," the reach of that doctrine is sharply limited. *Thuraissigiam*, 591 U.S. at 140 (internal quotation marks omitted). While the doctrine may extend further than the twenty-five yards and twenty-four hours at issue in *Thuraissigiam*, *id.* at 113, no one could seriously contend that it applies to a noncitizen like Petitioner who has been living in the United States for decades.

> Under settled Supreme Court precedent, "aliens who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy*, 345 U.S. at 212 (emphasis added). That is, "once an alien enters the country, the legal circumstance changes, . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533

3

U.S. at 693. The government's reading runs afoul of these fundamental principles.

*Cunha*, 2026 WL 1146044, at \*15 (citations modified and paragraph breaks added).

Though not binding on this Court, the Court finds the Second Circuit's analysis persuasive and agrees the entry fiction doctrine cannot apply to noncitizens like Petitioner, who has been in the United States for over two years. *See also Mendibaev v. Lyons*, No. 1:25-cv-01308-DHU-GBW, 2026 WL 917457, at \*5 (D.N.M. Apr. 4, 2026) (where petitioner was arrested in Chicago after living there for over two years with his family, had no criminal history, and had not been ordered removed, his "due process rights with respect to his detention pending removal proceedings flow not from the entry fiction but from his geographic presence inside the country"); *Rincon v. Hyde*, 810 F. Supp. 3d 101, 106 (D. Mass. 2025) ("[T]he Supreme Court has never applied the entry fiction doctrine to a case like this—to constitutionally justify the detention of a person living freely, for years, within the United States.").

Thus, consistent with its prior decisions, the Court finds Petitioner is subject to detention under § 1226(a), not § 1225(b)(2). Petitioner is thus entitled to a prompt bond hearing pursuant to § 1226(a).

Accordingly, the Petition is GRANTED in part and Respondents are directed to provide Petitioner with a prompt bond hearing under 8 U.S.C. § 1226(a). Because the Court grants relief on statutory grounds, it declines to reach the remaining claims.

IT IS SO ORDERED this 1st day of May, 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE